IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARTHA A. WATSON MARRS,

    Petitioner,

vs.

PEOPLE OF THE STATE OF CALIFORNIA,

    Respondents.

No. CIV S-10-0283 GGH P

<u>ORDER</u> &

<u>FINDINGS AND RECOMMENDATIONS</u>

I. <u>Introduction</u>

    Petitioner, a prisoner proceeding pro se, has filed a petition pursuant to 28 U.S.C. §2254. Petitioner was sentenced to five years of supervised probation pursuant to an October 3, 2007, Yuba County Superior Court judgment, following a conviction by a jury of a felony attempted kidnapping of a child under 14 (Cal. Pen. Code §§664/208(b)) and a misdemeanor resisting arrest (Cal. Penal Code § 148(a)(1)). Petition, pp. 1-2; Answer, p. 6. Petitioner alleges a denial of her rights to due process and a fair trial based on the following grounds: 1) insufficient evidence of intent to kidnap child for jury to convict; 2) trial court failed to properly instruct, sua sponte, on a lesser included offense. Petition, pp. 5, 7, 22, 32-55.

\\\\

II. <u>AEDPA</u>

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" <u>Harrington v. Richter</u>, 131 S.Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Id</u>. at 784-785, citing <u>Harris v. Reed</u>, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Id</u>. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" <u>Harrington</u>, supra, 131 S.Ct. at 785, citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120

S.Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must

1  show that the state court's ruling on the claim being presented in federal court was so lacking in
2  justification that there was an error well understood and comprehended in existing law beyond
3  any possibility for fairminded disagreement." Harrington, supra, 131 S.Ct. at 786-787. "Clearly
4  established" law is law that has been "squarely addressed" by the United States Supreme Court.
5  Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).  Thus, extrapolations of
6  settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.
7  Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state
8  sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear
9  prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly
10 established law when spectators' conduct is the alleged cause of bias injection).  The established
11 Supreme Court authority reviewed must be a pronouncement on constitutional principles, or
12 other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on
13 federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

14          The state courts need not have cited to federal authority, or even have indicated
15 awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S.Ct.
16 at 365.  Where the state courts have not addressed the constitutional issue in dispute in any
17 reasoned opinion, the federal court will independently review the record in adjudication of that
18 issue.  "Independent review of the record is not de novo review of the constitutional issue, but
19 rather, the only method by which we can determine whether a silent state court decision is
20 objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

21 III.  Factual Background

22          The Third District Court of Appeal has, in an unpublished opinion, accurately set
23 forth the facts of the case as reflected by the trial record (with one minor correction noted here as
24 footnote 1):

25  > Around 8:00 p.m. on December 1, 2006, four-year-old C. and his
   > grandparents stopped at a market after church to get something to
26 > drink. C. and the grandfather went into the market.

4

> While the two were at the self-serve soda fountain to fill their cups, defendant (whom they did not know) grabbed C. from behind and started kissing him. C. was "startled," and the grandfather told defendant to get her hands off C. because she did not know him. C. insisted that she did,[1] but the grandfather told her to " 'just leave [C.] alone.' " Defendant "kind of walked away" and said that she loved C., to which the grandfather responded that she " 'd[id]n't need to be grabbing him.' "
>
> Defendant followed the grandfather and C. to the payment counter and eventually out the door. When they reached the car, defendant stood behind the grandfather as he was strapping C. into his car seat. Defendant told the grandfather C. "had rights," "she was representing his rights," and she was "[t]rying to get the boy." The grandfather told her "he didn't know her" and "she needed to back off."
>
> The grandfather strapped C. into his car seat, shut C.'s door, and went to open his own door. Defendant opened C.'s door, put "her hands on" on C., and "tr[ied] to get him out of his seat." Within less than a second, the grandfather "got back there," pulled defendant away, shut C.'s door, and told defendant to stay away from the car. Defendant "[c]uss[ed]" at the grandfather, who was now back in the driver's seat with his door locked.
>
> Defendant came back again, tried to open C.'s door, and when "[i]t wouldn't work," tried to open the grandfather's door. The grandfather jumped out of the car, "shoved [defendant] all the way up to the store," and told her to stay away from them. Defendant said "she was trying to protect [C.], needed to get him to keep him safe," and warned the grandfather he "needed to be careful because she had taken down bigger men than him."
>
> The grandfather returned to the car and "started to try to back out." Defendant followed the grandfather to the car and continued "cussing" at him. The grandfather drove the car out of the parking lot and called police.
>
> When a sheriff deputy tried to arrest defendant, she attempted to hit him. Three deputies eventually took defendant into custody.

People v. Marrs, 2009 WL 271239 at *1 (Cal. App.3rd Dist. 2009); Answer, Exhibit (Exh.) 1 .

---

[1] This is evidently a typographical error as the record does not reflect that there was ever any testimony that the child (C.) ever said anything, much less that he knew petitioner. See RT 21-70, 72. Actually, C.'s grandfather testified that petitioner first told him (C.'s grandfather) that she did know him (the grandfather), then said that she did not know him but that he (the grandfather) knew her. RT 27.

IV.  Procedural Background

A four-count information was filed by the Yuba County District Attorney alleging that petitioner, on December 1, 2006, had (count 1) attempted to kidnap a child under 14 years of age (Cal. Pen. Code § 664/208(b) – a felony; (count 2) willfully placed a child in a situation where the child might be endangered (Cal. Pen. Code § 237a(b)– a misdemeanor; (count 3) unlawfully used a controlled substance (Cal. Health & Safety Code § 11550(a) – a misdemeanor; (count 4) resisted arrest (Cal. Pen. Code § 148(a)(1)). CT 109-10.[2]  Criminal proceedings were suspended by the court on January 17, 2007, when petitioner was ordered to undergo an evaluation (Cal. Pen. Code § 1368), her counsel having expressed the opinion that she was mentally incompetent.  CT 20-21, 32.  Petitioner was found incompetent to stand trial on February 13, 2007, and the court committed her on February 26, 2007, to Patton State Hospital for her sanity to be restored.  CT 29, 40-41.  Certification by the hospital of petitioner's mental competence was received by the court on July 9, 2007 and, on July 13, 2007, petitioner was found mentally competent to stand trial and criminal proceedings were reinstated.  CT 45, 54.  However, two weeks later, on July 27, 2007, the court again suspended further proceedings on the question of petitioner's mental competence, ordering another § 1368 hearing.  CT 68-69, 71-73.  On August 16, 2007, petitioner was found competent to stand trial based on the report of the appointed psychologist.  CT 77.  Counts two and three were dismissed and a jury trial held as to counts one and four.  CT 132; RT 2, 7-8. Petitioner was found guilty by the jury, on October 3, 2007, of attempted kidnapping and resisting arrest.  RT 119-120.  The court placed petitioner on five years of formal probation, suspending sentencing, and assessed various fines against petitioner: restitution in the amount of $200 pursuant to Cal. Pen. Code §1202.4; restitution of $200 for a probation revocation fine under §1202.44; a $20 court security fee pursuant to §1465.8; and a $20 a month fee for probation services for the five year probation term.  CT 213; RT 138.  See also, Petition, pp. 26-28;

---

[2] Respondent's Lodged Document 4 is the Clerk's Transcript.

Answer, pp. 8-9.[3]

Petitioner's timely notice of appeal was filed on December 6, 2007; the state court of appeal affirmed the judgment on February 5, 2009; the March 13, 2009 petition for review to the California Supreme Court was denied on April 15, 2009. CT 219; Answer, pp. 19-25; respondent's Lodged Document 3; Petition, p. 4. No state collateral petition was filed; the instant petition was docketed as filed on February 3, 2010. Following briefing, the matter was submitted as of June 21, 2010.

V. <u>Claim 1- Insufficiency of the Evidence</u>

Petitioner claims she was denied her right to due process and her Sixth Amendment right to a fair trial when she was convicted of attempting to kidnap a child without sufficient evidence of such intent. Petition, pp. 5, 33-44.

<u>Legal Standard - Sufficiency of the Evidence</u>

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979). <u>Jackson</u> established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. <u>U.S. v. Nevils</u>, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). First, the court considers the evidence at trial in the light most favorable to the prosecution. <u>Id.</u>, citing <u>Jackson</u>, 443 U.S. at 319, 99 S.Ct. 2781. "'[W]hen faced with a record of historical facts that supports conflicting inferences," a reviewing court 'must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" <u>Id.</u>, quoting <u>Jackson</u>, 443 U.S. at 326, 99 S.Ct. 2781.

---

[3] The court's electronic pagination of the petition and the answer is referenced.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id., quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781. "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." Id.

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

Argument and Analysis

Petitioner states in handwritten letters attached to her petition that she is innocent and that all she "was trying to do was make friends and give them my phone # and address" so that her four-year-old son could play with the child on weekends. Petition, pp. 16-17. She claims she "never touched the back door" or did anything "they said I did," including resist arrest. Id. Petitioner's description of her arrest involves her claim of having been thrown to the ground and placed in handcuffs and having been tested for lack of sobriety with little or no provocation. Id., at 17-19. Petitioner primarily, however, relies on the arguments raised on direct appeal to the Third District Court of Appeal, appending a copy of her opening brief to the instant petition. Petition, pp. 21-57.[4]

\\\\

---

[4] Respondent has lodged a copy of "Appellant's Opening Brief" before the Third District Court of Appeals and a copy of the "Petition for Review" to the California Supreme Court. See respondent's Lodged Documents 1 & 2.

8

Petitioner is correct that the prosecution must prove every element of a crime beyond a reasonable doubt to a jury. Petition, pp. 33-34, 39. It is the prosecution's burden to prove all elements of a charged offense. Sullivan v. Louisiana, 508 U.S. 275, 277-278, 113 S.Ct. 2078 (1993), citing inter alia, Patterson v. New York, 432 U.S. 197, 210, 97 S. Ct. 2319 (1977). The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068 (1970). Petitioner notes the distinction between simple kidnapping, which is a general intent crime, and attempted kidnapping, which requires a specific intent. Petition, p. 35. Attempted kidnapping, under California law, requires (1) a specific intent to commit the offense and (2) a direct but ineffectual act done toward its commission. Id., citing Cal. Pen. Code § 21a.[5] Petitioner cites People v. Cole, 165 Cal.App.3d 41, 50, 211 Cal. Rptr. 242 (1985), which notes that while to prove kidnapping, it must be shown that the movement of the victim was substantial, while "asportation simply is not an element of" attempted kidnapping. Petitioner contends that intent may be shown by actions or statements but that her actions within the store of hugging the child then letting him go voluntarily and her words outside at the car, stating she was there to protect the child and his rights, do not demonstrate any intent to move the child a substantial distance. Petition, p. 36. Thus, according to petitioner, the only direct or circumstantial evidence was that she believed she knew the child and wanted to "protect" him and his rights but did not show an intent to kidnap. Id. at 36-37. Petitioner argues that had she been attempting to kidnap the child she would have done so when

\\\\

\\\\

\\\\

\\\\

---

[5] "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." Cal. Pen. Code § 21a.

1 she "bear"-hugged him in the store. Id., at 37. Under Cal. Penal Code §§ 207(e),[6] 208(b),[7] the act of moving or attempting to move a child is not criminalized unless done for an illegal purpose or with an illegal intent. Petition, p. 40. Petitioner maintains that she never said anything to indicate she intended to kidnap the child only to protect his rights and that there was a dearth of evidence that either the child or the grandmother felt threatened. Id., citing RT 30, 38, 45, 47. These citations to the record do indicate that petitioner apparently insisted she was protecting the child's rights but they also show that petitioner kept moving toward the child and grew more hostile once he was placed in the car.

> Q. Now, once you put him in the car seat - - when you were putting him in his car seat, where was Ms. Marrs?
> A.[8]  Right behind me.
> Q. And was she saying anything?
> A. Yes. She started telling me that he had rights. And she started making comments towards that.
> Q. And what did you do when she was making these comments?
> A. I just told her that she just needed to stay back away from us. She was moving towards us. And I said, "You just need to stay back away from us so we can leave."
>
> ----------------------------------------------------------------------------------
>
> Q. And did something happen once you got in your car?
> A. Yes. My wife, if I remember correctly, my wife hollered she was trying to open the back door. I immediately looked through the mirror. I could see she was. I jumped out of the car. And by that time she's got ahold of the door...

RT 30-31.

---

[6] "For purposes of those types of kidnapping requiring force, the amount of force required to kidnap an unresisting infant or child is the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent." Cal. Pen. Code § 207(e).

[7] "If the person kidnapped is under 14 years of age at the time of the commission of the crime, the kidnapping is punishable by imprisonment in the state prison for 5, 8, or 11 years. This subdivision is not applicable to the taking, detaining, or concealing, of a minor child by a biological parent, a natural father, as specified in Section 7611 of the Family Code, an adoptive parent, or a person who has been granted access to the minor child by a court order." Cal. Pen. Code § 208(b).

[8] Testimony on direct of the child's grandfather.

10

1    C.'s grandfather, testified on re-direct, following the encounter at
2  the soda fountain that he moved his grandson closer to him.  RT 38.

3    Q.  Why?
     A.  So she couldn't get to him.
4    Q.  Were you concerned about Colby's safety at that point?
     A.  Yes.
5    Q.  Why?
     A.  Well, somebody grabs your grandson without your permission
6    and you don't know them, you're going to be concerned that they
     come back.
7    Q.  But at that point you had not taken any offensive movements
     against Ms. Marrs, correct?
8    A.  No.  No.
     Q.  Why not?
9    A.  She just stayed where she was at that point.  Just talking.  So I
     didn't need to make a move.
10   Q.  At that point did you feel threatened by her crazy talk?
     A.  Me, personally?
11   Q.  Yeah.
     A.  Just made me nervous, you know.  She hadn't made any
12   movement towards me, so I didn't feel threatened in that way.  But
     made me nervous she would go back to him.
13   Q.  And when you moved up to pay for your soda, did you feel
     threatened at that point?
14   A.  I'm getting more nervous because she continues to follow me
     and make statements to me that don't make sense.
15   Q.  Now, when you - - the cussing that you described, that didn't
     occur until you prevented her access to Colby, correct?
16   A.  Yes.
     Q.  Once you closed that door, she could no longer get to him; that's
17   when her demeanor, language changed?
     A.  Yes.
18   Q.  Correct?
     A.  Yes.
19   Q.  Until that point she did not appear to be overly threatening?
     A.  No.
20

21 RT 38-39.

22    Direct testimony from the child's grandmother includes the following (also from a
23 page cited by petitioner):

24   Q.  What did you hear her say?
     A.  She was talking to my husband and she was telling him he
25   knew her.  She was trying to get Colby.  Didn't say his name.
     Trying to get the boy, telling him that she wanted to protect him.
26   Q.  What was your husband's reaction to this conversation?

11

> A. Well, he was trying to get Colby in as soon as he could and get him locked in his seat. And he kept telling her that he didn't know her, she needed to back off and just things like that and —
> Q. Once he got Colby secured in his car seat, what did he do?
> A. When he got Colby in, he shut the door and turned to open his door to get in, and as soon as he opened his door, she was trying to open the back door.

RT 45.

Petitioner also draws attention to another portion of the transcript that includes the following direct testimony from the child's grandmother.

> Q. She did try to get him out of his seat, but he was locked in - - locked into the seat?
> A. Yes, locked into the car seat.
> Q. And at that point your husband pushed her away again and closed the door?
> A. Yes. It wasn't just a second time that she had her hands on him and Ron had already got back there, was pulling her away.
> Q. And was she saying anything while this was going on?
> A. That she was trying to protect him, needed to get him to keep him safe. And while my husband was trying to get her away, she was telling him that he needed to be careful because she had taken down bigger men than him.
> Q. What was her tone like when she was saying that?
> A. Rough. At first started - - she was talking like they knew each other, casual. And then when the confrontation started, her voice changed. She was rougher.
> Q. Were you concerned about Colby's safety at that point?
> A. A little, but not a whole lot because he was buckled in his seat and my husband was there.

RT 47.

Petitioner points out that where minors or others incapable of giving consent are concerned they may taken or moved unlawfully without resorting to force or fear, and, on the other hand, may be forcibly transported lawfully for a good or innocent purpose. Petition, p. 41. It is kidnapping only if the taking and carrying way is done for an illegal purpose or with an illegal intent at the time. Id. Citing In re Michele D, 29 Cal.4th 600, 128 Cal.Rptr.2d 92 (2002) and People v. Ojeda-Parra, 7 Cal.App.4th 46, 8 Cal. Rptr.2d 634 (1992), petitioner maintains that one who forcibly but with a lawful intent moves a child cannot be guilty of kidnapping. Id., at 42.

\\\\

The appellate court in People v. Ojeda-Parra explains that the element of a specific unlawful intent is part of the kidnapping statute under Cal. Pen. Code § 207 "to avoid kidnapping convictions of 'good samaritans' attempting to protect a child or incapacitated adult from imminent harm." 7 Cal.App.4th at 50. In In re Michele D, the state Supreme Court found that a fifteen-year-old minor who had miscarried and then taken a friend's twelve-month-old to raise herself was guilty of kidnapping even though the force element of Cal. Pen. Code § 207 was not literally met – "[e]ven if force, as conventionally understood, was not used to effect [infant's] kidnapping, the minor's intent in carrying off the infant still renders her conduct kidnapping." 29 Cal.4th at 606. Likewise, respondent avers, petitioner's conduct in attempting to take C. forcibly from his grandparents constituted an illegal purpose. Answer, p. 14.

The state appellate court reasoned as follows:

> A person is guilty of kidnapping if she "forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into ... another part of the same county." (Pen.Code,FN1 § 207, subd. (a).) In the case of "an unresisting infant or child," "the amount of force required ... is the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent." (§ 207, subd. (e).)
>
> FN1. All further statutory references are to the Penal Code unless otherwise indicated.
>
> To commit the crime of attempted kidnapping, the defendant must do a direct but ineffectual act toward the commission of a kidnapping, with the specific intent to kidnap. (People v. Cole (1985) 165 Cal.App.3d 41, 47-48.) Whether the defendant had specific intent to commit a particular crime presents a question of fact that may be inferred from circumstantial evidence. ( Id. at p. 48.)
>
> Here, defendant argues there was "insufficient evidence that she intended to abduct the child for any reason" or to take him "someplace else for an illegal intent or illegal purpose." We are not persuaded because there was sufficient evidence that defendant intended to kidnap C. within the meaning of the statute. The evidence showed that defendant wanted to "take C." or "get" C. away from his grandparents, took a step toward doing that when she opened the car door and tried to remove C. from his car seat, FN2 and threatened to take down the grandfather when he interfered. Her

illegal purpose or improper intent was apparent because she ignored the grandfather's repeated requests not to touch the child, and she had no right to take the child. It is immaterial that defendant might have *thought* she was protecting him and keeping him safe, as the statute immunizes from conviction only those acts "taken to protect the child from danger of imminent harm," ( § 207, subd. (f)(1)) and here there was no evidence the minor was in danger of any harm (except from defendant herself). On this record, defendant's argument fails.

> FN2. Defendant states that it "appears that the jury allowed their speculation about what [she] was going to do if she opened the car door [to] overshadow the undisputed evidence that when she was in the store and had the child in her arms, she made no attempt to kidnap him." The jury did not need to speculate about what defendant wanted to do at the car, because the evidence showed that while at the car, she touched C., tried to take him out of his car seat, and said she was trying to get C.

People v. Marrs, 2009 WL 271239 at *2 [emphasis in original.]

The federal habeas court determines sufficiency of the evidence by reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16, 99 S. Ct. 2781; accord, Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004). The problem for petitioner is not that she does not have a plausible legal argument in the abstract, it is simply that the argument does not meet her burden to show that the conflicting inferences reached by the trier of fact were outside the range of what a reasonable fact trier could conclude. And based on the evidence, petitioner's argument as to the factual inferences to be drawn are, charitably speaking, implausible.

This court has independently reviewed the transcripts and record of the proceedings leading to petitioner's conviction and finds that sufficient evidence was presented to support the jury's findings and verdict. There was evidence introduced at trial, which was summarized by the Court of Appeal, from which a rational juror could have found that petitioner committed an attempted kidnapping. The relevant question is not whether this court is convinced beyond a reasonable doubt that petitioner attempted to kidnap the child, or whether there was any

14

evidence that petitioner did not intend to kidnap the child, but rather whether any rational trier of fact could have been persuaded beyond a reasonable doubt that petitioner's actions demonstrated an illegal intent to take and carry the child away. As the state appellate court made clear, it is not germane that petitioner may have misguidedly thought she was protecting the child when there was sufficient evidence that she intended to take the child and that any such intended taking did not meet the statutory requirements to shield her from culpability because they could not rationally be shown to have been taken to protect the child from the danger of an imminent harm (but rather, in fact, to have placed him in it). Judged by the elements defined in California law, the jury could have concluded she intended to take the child a substantial distance for an illegal purpose or with an illegal intent. Accordingly, this claim should be denied.

VI.  Claim 2 - Failure of Trial Court to Properly Instruct, Sua Sponte, on a Lesser Included Offense Violated Petitioner's Rights to Due Process and to a Fair Trial

Petitioner contends that false imprisonment is a lesser included offense of kidnapping and that attempted false imprisonment is a lesser included offense of attempted kidnapping, although she concedes there are no published cases determining that attempted false imprisonment necessarily is a lesser included offense of attempted kidnapping. Petition, pp. 46-48. On the other hand, for purposes of the argument before it, the Third District Court of Appeal assumed, without deciding, attempted false imprisonment to be a lesser included offense of attempted kidnapping. See below, People v. Marrs, 2009 WL 271239 at *2, n. 3.

Petitioner argues that logic leads to the conclusion that attempted false imprisonment must be included as a lesser offense to attempted kidnapping because one who has the specific intent to kidnap necessarily has the requisite specific intent to restrict or violate a victim's personal liberty to establish the commission of an attempted false imprisonment. Id., at 48-49. Petitioner maintains that the trial court committed error in failing to properly instruct the jury as to misdemeanor attempted false imprisonment, violating petitioner's right to due process, for which the standard of Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824 (1967), is the

applicable standard to assess prejudice. Id., at 49.  Under Chapman, a federal constitutional error must be found to be harmless beyond a reasonable doubt, that is, that the alleged error, beyond a reasonable doubt, did not lead to the verdict. 386 U.S. at 24.  However, it is putting the cart before the horse where no such error has even been established.

Citing the record, petitioner maintains that the "act of embracing the child in the store was technically false imprisonment, since it temporarily restricted the freedom of the child, against his will;" she avers that the jury could have drawn the same conclusion as to the activities at the car. Petition, pp. 49-50, citing RT 26-28. Petitioner states that she never said anything to indicate that she wanted to take the child away, merely that she wanted to "protect his rights." Id., at 50, citing RT 29. Petitioner again contends that the grandmother testified that she did not feel threatened and that the child did not appear alarmed. Id., citing RT 47.[9] Petitioner's point is that had the jury been instructed with attempted false imprisonment, they would have another choice between convicting petitioner of a violent felony or finding her not guilty. Id., at 50. Petitioner cites People v. Castro, 138 Cal. App.4th 137, 143 (Cal. App. 2nd Dist. 2006), wherein the Second District Court of Appeal determined that the trial court's failure to provide the lesser included offense of misdemeanor false imprisonment was prejudicial and reversible error, on facts petitioner argues were both less benign and ambiguous than the instant case. Id., at 51. In that case, the state appellate court found the evidence that appellant had grabbed the victim, turned her around and used force to pull her toward his car was sufficient to support a conviction for felony false imprisonment. Castro, 138 Cal. App. 4th at 143. But the state court of appeals reversed the judgment for the trial court's failure to give the lesser included misdemeanor false imprisonment jury instruction because, pursuant to state case law, "reversal is warranted if 'it appears 'reasonably probable' the defendant would have achieved a more favorable result had the error not

---

[9] Actually, the grandmother's testimony was that she felt only a little concerned at the particular point because the child had been secured into his car seat and her husband was there. See infra.

occurred. [Citation.]" Castro, 138 Cal. App. 4th at 144, quoting People v. Breverman, 19 Cal.4th 142, 149, 77 Cal.Rptr.2d 870 [] (1998)).  The Castro Court found that although there was sufficient evidence to support the felony false imprisonment conviction, the error could not be found harmless where "[t]he facts are sufficiently ambiguous that a conviction for misdemeanor false imprisonment might also have been justified...." Id.  Petitioner identifies two different opinions as to the appropriate prejudice standard when the trial court fails to instruct on a lesser included offense.  Petition, p. 28, comparing People v. Rogers, 39 Cal.4th 826, 867-868, 48 Cal. Rptr.3d 1 (2006) (applying the Watson[10] standard, requiring reversal only if reasonably probable jury would have returned a different verdict absent the error(s) complained of) to People v. Elliot, 37 Cal.4th 453, 475, 35 Cal. Rptr.3d 759 (2005) (applying the Chapman standard, noted above). This question is moot, however, where no error has been established by the omission of the instruction sua sponte at issue.

        Respondent argues that "[p]etitioner's efforts in repeatedly attempting to separate C. from his grandparents show the specific intent to take the child and not to merely detain him at the scene." Answer, p. 17.  Respondent observes that this federal court is bound by a decision by the California intermediate court of appeals interpreting state law. Id., citing Broadheim v. Rowland, 993 F.2d 716, 717 (9th Cir. 1993) (finding that federal court could only "re-examine a state court's interpretation of its own law...if 'the court's interpretation is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation'").

        In affirming the conviction, the Third District Court of Appeal stated:

> *The Court Was Not Required To Instruct On Attempted False Imprisonment*
>
> Defendant contends the court erred in failing to instruct sua sponte on the offense of attempted false imprisonment as a lesser included offense of attempted kidnapping. We disagree because there was

---

[10] People v. Watson, 46 Cal.2d 818, 836-837 (1956).

1         insufficient evidence of attempted false imprisonment. FN3

2              FN3. For the purpose of this argument only, we assume without deciding that attempted false imprisonment is a lesser included offense of attempted kidnapping. (See People v. Gibbs (1970) 12 Cal.App.3d 526, 547 [false imprisonment is a lesser included offense of kidnapping]; People v. Magana (1991) 230 Cal.App.3d 1117, 1120-1121 [same].)

        "An instruction on a lesser included offense must be given only when the evidence warrants such an instruction. [Citation.] To warrant such an instruction, there must be substantial evidence of the lesser included offense, that is, 'evidence from which a rational trier of fact could find beyond a reasonable doubt' that the defendant committed the lesser offense. [Citation.] Speculation is insufficient to require the giving of an instruction on a lesser included offense. [Citations.] In addition, a lesser included instruction need not be given when there is no evidence that the offense is less than that charged." ( People v. Mendoza (2000) 24 Cal.4th 130, 174.)

        *3 Defendant contends the jury could have concluded that she was simply going to embrace C. at the car, given her act of embracing C. in the store and that act "technically [qualified as] false imprisonment." She argues this is a reasonable inference because "[s]he never once said anything indicating that she wanted to, or intended to take the child away" and "did not even touch the child at the car."

        The factual predicate on which defendant bases her argument is incorrect. When defendant went to the car, she stated she was "[t]rying to get the boy." The grandfather warned defendant to stay away from them, but she ignored his warning. Then, once the grandfather had secured C. in the car seat, shut C.'s door, and went to open his own door, defendant succeeded in opening C.'s door, put "her hands on" on C. and "tr[ied] to get him out of his seat." Given this evidence, defendant's argument fails.

People v. Marrs, 2009 WL 271239 at *2-*3.

        <u>Analysis/Conclusion</u>

        The court notes that in a non-capital case, such as the one presented here, the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir.1984) (quoting James v. Reese, 546 F.2d 325, 327 (9th

Cir.1976) ( per curiam )). While the United States Supreme Court, in Beck v. Alabama, 447 U.S. 625, 638 (1980), has held that criminal defendants possess a constitutional right to have the jury instructed on a lesser included offense in a capital murder case, the Beck court also expressly reserved the question of whether due process mandates the application of the same right in a non-capital case. See Beck, 447 U.S. at 638, n. 7; Solis v. Garcia, 219 F.3d 922, 928 (9th Cir.2000). Thus, in a non-capital case, the failure of a trial court to sua sponte instruct on a lesser included offense does not present a federal constitutional question that would warrant habeas corpus relief. Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir.1998).

The Ninth Circuit in Solis noted that there might exist an exception to this general rule for adequate jury instructions on a defendant's theory of defense. Solis, 219 F.3d at 929 (citing Bashor, 730 F.2d at 1240, but noting that Windham, 163 F.3d at 1106, mentioned no such exception to the general rule). Even if a "theory of the defense" exception exists, that is, even assuming the failure to instruct on a lesser included offense raises a federal issue, it is not applicable, here because, as the California Court of Appeal found, there was insufficient evidence to support a theory of attempted false imprisonment; indeed, as that court observed, the factual predicate on which such a theory would rest is incorrect. That is, the evidence of the case does not demonstrate that petitioner's attempts to reach the child were anything but an effort on her part to abscond with the child rather than restrain him. This being the case, a sua sponte instruction of attempted false imprisonment, was unwarranted. People v. Mendoza, 24 Cal. 4th 130, 174, 99 Cal. Rptr. 485 (2000) (lesser included offense instruction must be given only when the evidence warrants it). In light of all the evidence, petitioner's argument here is palpably implausible. The state court decision was not an unreasonable application of clearly established Supreme Court authority. This claim should be denied.

Accordingly, IT IS ORDERED that a district judge be assigned to this case.

IT IS HEREBY RECOMMENDED that the petition be denied.

\\\\

1  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 23, 2011

      /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:009
marr0283.hab